**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 23-cv-02675-SKC-STV

BETTINA B. BEAVER,

      Plaintiff,

v.

AMAZON.COM SERVICES LLC,

      Defendant.

---

**RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE**

---

Magistrate Judge Scott T. Varholak

This civil action is before the Court on Defendant's Motion to Dismiss Plaintiff's Amended Complaint [#46] (the "Motion"). The Motion has been referred to this Court. [#53] This Court has carefully considered the Motion and related briefing, the entire case file, and the applicable case law, and has determined that oral argument would not materially assist in the disposition of the Motion. For the following reasons, the Court respectfully **RECOMMENDS** that the Motion be **GRANTED**, as set forth below.

## I.      BACKGROUND[1]

Plaintiff, a Native American female, was hired by Defendant in or around October 2021 as an "Associate." [#33 at 15-16] On or about October 15, 2021, Lonnie Anderson,

---

[1] The facts are drawn from the allegations in Plaintiff's Amended Complaint [#33], which must be taken as true when considering a motion to dismiss. *Wilson v. Montano*, 715 F.3d 847, 850 n.1 (10th Cir. 2013) (citing *Brown v. Montoya*, 662 F.3d 1152, 1162 (10th Cir. 2011)). The Court also considers the Charge of Discrimination filed with the Colorado Civil Rights Division and the U.S. Equal Employment Opportunity Commission (the "EEOC") [#33 at 15-16], and the EEOC Notice of Right to Sue [#33 at 17], as these documents were attached to Plaintiff's Complaint and incorporated by reference. [*See*

a male co-worker, came up to Plaintiff as she was watching training videos and "grabbed her badge located near her breast, looked at [ ] the badge, let it go and walked away without speaking to her." [#33 at 5]  The following day, Plaintiff spoke to a female co-worker about the incident. [*Id*.]  "[N]o resolution was ever provided to [Plaintiff]." [*Id*.]  In or about November 2021, Plaintiff submitted a request for training in other job assignments. [*Id.* at 5]  In February 2022, Plaintiff submitted numerous job transfer requests which were declined without explanation.  [*Id*.]

In March 2022, Plaintiff was promoted to the position of "Learning Ambassador." [#33 at 15]  After the promotion, Plaintiff asked a Human Resources employee, Jamie Kern, why her male coworker made 30 cents more than her.  [*Id.* at 6, 7]  Mr. Kern told Plaintiff that she would receive her 30 cent raise after six months of employment.  [*Id.* at 7]  Plaintiff "felt [they] had an understanding at this time and thanked [Mr. Kern] for explaining this process."  [*Id*.]

On April 10, 2022, Defendant assigned Plaintiff to work as a pallet wrapper.  [*Id.* at 5, 8]  Plaintiff had not previously requested training in this role, because working as a pallet wrapper made her dizzy. [*Id.* at 5]  On this day, an employee took Plaintiff's wrap pole, and Plaintiff did not have any stagers to move the pallets.  [*Id.* at 8]  Due in part to these obstacles, Plaintiff "could no longer do [her] job without placing pallets outside of

---

*generally* #33]; *see Commonwealth Prop. Advocs., LLC v. Mortg. Elec. Registration Sys., Inc.*, 680 F.3d 1194, 1201 (10th Cir. 2011) ("In evaluating a motion to dismiss, [a court] may consider not only the complaint, but also the attached exhibits and documents incorporated into the complaint by reference.").  The Court does not consider any additional factual allegations raised by Plaintiff in briefing.  *See In re Qwest Commc'ns Int'l, Inc.*, 396 F. Supp. 2d 1178, 1203 (D. Colo. 2004) (disregarding additional factual claims asserted in briefing on a motion to dismiss, explaining that "plaintiffs may not effectively amend their Complaint by alleging new facts in their response to a motion to dismiss").

safety lines," and she clocked out until her next shift. [*Id.*]  For her next shift, Plaintiff was again assigned as pallet wrapper. [*Id.*]  Plaintiff explained to management that she did not want to be a pallet wrapper because she is not "provide[d] what [she] need[s] to do [her] job effectively and that [she] was trained to do other things."  [*Id.*]  When management was unwilling to accommodate Plaintiff's request for reassignment, she left for the day. [*Id*. at 8-9]

On April 11, 2022, Plaintiff was assigned to work as a gatekeeper.   [*Id.* at 10-11] Plaintiff could not find an available radio to use.  [*Id.*]  Plaintiff's manager said he was informed Plaintiff "refused to take a radio."  [*Id*. at 10, 16]  Later, this manager clarified that it is not standard to have a radio as a gatekeeper and "not to worry about having a radio."   [*Id*. at 10] Plaintiff spoke to several Human Resources employees about the "incident" and was asked to write a statement describing what happened. [*Id*. at 11-12] Three days later, Plaintiff resigned and notified Human Resources that her last day would be April 17, 2022.  [*Id*. at 16]  After resigning, Plaintiff received three attendance infraction violations. [*Id*. at 6]

On November 16, 2022, Plaintiff filed an EEOC Charge of Discrimination, alleging discrimination based on color, national origin, race, and sex.  [*Id*. at 15-16]  On December 13, 2022, the EEOC issued a No Cause determination and a Notice of Suit Rights.  [*Id*. at 17]  Plaintiff initiated this action on March 10, 2023.  [#1]   Plaintiff filed the operative Amended Complaint (the "Complaint") on November 15, 2023.  [#33] Construed liberally, the Complaint arguably asserts claims pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII") and 42 U.S.C. § 1981 ("Section 1981") for: (1) hostile work environment;[2] (2)

---

[2] Plaintiff labels this cause of action "unlawful employment practices – hostile work environment." [#33 at 4]  Plaintiff also appears to assert an additional cause of action for

race and sex discrimination; and (3) retaliation.  [#33 at 2-6]  On December 19, 2023,

Defendant filed the instant Motion to Dismiss.  [#46]  Plaintiff has responded to the Motion

[#54], and Defendant has replied [#65].

## II.    STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 12(b)(6), a court may dismiss a complaint

for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  In

deciding a motion under Rule 12(b)(6), a court must "accept as true all well-pleaded

factual allegations . . . and view these allegations in the light most favorable to the

plaintiff."  *Casanova v. Ulibarri*, 595 F.3d 1120, 1124 (10th Cir. 2010) (alteration in original)

(quoting *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009)).  Nonetheless, a

plaintiff may not rely on mere labels or conclusions, "and a formulaic recitation of the

elements of a cause of action will not do."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555

(2007).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter,

accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*,

556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).  Plausibility refers "to the

scope of the allegations in a complaint: if they are so general that they encompass a wide

swath of conduct, much of it innocent, then the plaintiffs 'have not nudged their claims

across the line from conceivable to plausible.'"  *Robbins v. Oklahoma*, 519 F.3d 1242,

1247 (10th Cir. 2008) (quoting *Twombly*, 550 U.S. at 570).  "The burden is on the plaintiff

---

"sexual harassment/harassment." [#33 at 3]  Because these claims relate to the same conduct and because "hostile work environment" is one of the two types of actionable sexual harassment under Title VII (the other being *quid pro quo* harassment), *Huizar v. Leprino Foods*, No. 09-CV-00908-WYD-CBS, 2011 WL 1002019, at *3 (D. Colo. Mar. 18, 2011), the Court treats these as the same claim.

to frame a 'complaint with enough factual matter (taken as true) to suggest' that he or she is entitled to relief." *Id.* (quoting *Twombly*, 550 U.S. at 556).  The court's ultimate duty is to "determine whether the complaint sufficiently alleges facts supporting all the elements necessary to establish an entitlement to relief under the legal theory proposed." *Forest Guardians v. Forsgren*, 478 F.3d 1149, 1160 (10th Cir. 2007).

"A pro se litigant's pleadings are to be construed liberally and held to a less stringent standard than formal pleadings drafted by lawyers." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991) (citing *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972)).  The Court, however, cannot be a *pro se* litigant's advocate.  *See Yang v. Archuleta*, 525 F.3d 925, 927 n.1 (10th Cir. 2008).

## III.    ANALYSIS

Defendant argues that Plaintiff's claims must be dismissed because: (1) Plaintiff's Complaint does not meet the pleading standards of Federal Rule of Civil Procedure 8 [#46 at 5-8]; (2) the hostile work environment claim is untimely [*id*. at 8-9]; and (3) Plaintiff fails to state a claim for hostile work environment, discrimination or retaliation [*id*. at 9-14].  Because the Court agrees that Plaintiff has failed to plausibly plead the elements of her claims, it does not address the alternative arguments for dismissal.

### A.  Hostile Work Environment

Plaintiff appears to allege a hostile work environment claim under Title VII, on the basis of her race, sex, color, and/or national origin.[3]  [#33 at 4]  "The elements of a hostile

---

[3] It is unclear whether Plaintiff brings a separate hostile work environment claim based on race under Section 1981, but regardless "[t]he same substantive standards apply to a hostile work environment claim [based on race] regardless of whether the plaintiff has brought it under § 1981 or Title VII." *Lounds v. Lincare,* Inc., 812 F.3d 1208, 1221 (10th Cir. 2015). Accordingly, the Court is guided by Title VII cases in assessing Plaintiff's hostile work environment claim.

work environment claim are: (1) the plaintiff is a member of a protected group; (2) the plaintiff was subjected to unwelcome harassment; (3) the harassment was based on the protected characteristic . . . ; and (4) the harassment was sufficiently severe or pervasive to alter a term, condition, or privilege of the plaintiff's employment and created an abusive working environment." *Asebedo v. Kan. State Univ.*, 559 F. App'x 668, 670 (10th Cir. 2014) (citing *Dick v. Phone Directories Co.*, 397 F.3d 1256, 1262-63 (10th Cir. 2005). A plaintiff may succeed in proving a hostile work environment claim either on the pervasiveness of the harassment or based upon its severity. *MacKenzie v. City and Cnty. of Denver*, 414 F.3d 1266, 1280 (10th Cir. 2005), *abrogated on other grounds by Lincoln v. BNSF Ry. Co.*, 900 F.3d 1166 (10th Cir. 2018). However, "Title VII does not establish 'a general civility code' for the workplace." *Marks v. Sessions*, No. 16-cv-02106-WYD-MEH, 2017 WL 4278498, at *4 (D. Colo. Sept. 27, 2017) (quoting *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 81 (1998)). "Accordingly, 'the run-of-the-mill boorish, juvenile, or annoying behavior that is not uncommon in American workplaces is not the stuff of a Title VII hostile work environment claim.'" *Id.* (quoting *Morris v. City of Colo. Springs*, 666 F.3d 654, 664 (10th Cir. 2012)). "[S]imple teasing, offhand comments, and isolated incidents (unless extremely serious)" do not amount to actionable conduct under Title VII. *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998) (quotation and citation omitted).

"The severity and pervasiveness of the conduct must be judged from both an objective and a subjective perspective." *O'Shea v. Yellow Tech. Servs., Inc.*, 185 F.3d 1093, 1097 (10th Cir. 1999). "[W]hether an environment is 'hostile' or 'abusive' can be determined only by looking at all the circumstances . . . includ[ing] the frequency of the

6

discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993). "In demonstrating these factors, the plaintiff 'must show more than a few isolated incidents' of enmity." *Sidlo v. Millercoors*, LLC, 718 F. App'x 718, 728 (10th Cir. 2018) (quoting *Lounds v. Lincare, Inc.*, 812 F.3d 1208, 1223 (10th Cir. 2015)). Where "none of the acts [a plaintiff] complains of, either considered alone or in combination, can be said to have altered the conditions of employment such that the atmosphere was abusive . . . dismissal for failure to state claim is proper." *Pfannenstiel v. Kansas*, No. 5:21-cv-04006-HLT-ADM, 2022 WL 873674, at *12 (D. Kan. Mar. 24, 2022) (quoting *Chand v. Braithwaite*, No. 3:20-1578-MGL-PJG, 2020 WL 9209284, at *2 (D.S.C. 2020)).

Here, the Court finds Plaintiff's hostile work environment claim fails because Plaintiff has failed to plausibly plead that the alleged harassment was severe or pervasive. Construing the Complaint liberally, the following allegations support the hostile work environment claim:

(1) On or about October 15, 2021, a male co-worker came up to Plaintiff as she was watching training videos and "grabbed her badge located near her breast, looked at [ ] the badge, let it go and walked away without speaking to her" [#33 at 5];

(2) After Plaintiff received a promotion, Plaintiff asked a Human Resources employee, Mr. Kern, why her male coworker made 30 cents more than her, and Mr. Kern told Plaintiff that she would receive her 30 cent raise after six months of employment [*id*. at 6, 7];

7

(3) On April 10, 2022, Defendant failed to reassign Plaintiff even though

working as a pallet wrapper made Plaintiff dizzy, an employee took

Plaintiff's wrap pole, and Plaintiff did not have any stagers to move the

pallets [*id*. at 8-9]; and

(4) On April 11, 2022, Plaintiff's manager said he was informed Plaintiff

"refused to take a radio" when Plaintiff simply could not find an available

radio to use [*id*. at 10-12].

None of these allegations are severe enough to support a hostile work environment

claim. The most serious allegation is Plaintiff's assertion that a male co-worker came up

to her as she was watching training videos and grabbed her badge. [#33 at 5] But there

are no allegations that this male co-worker made physical contact, nor is one isolated

incident such as this sufficient to create a hostile work environment. *Brown v. LaFerry's

LP Gas Co*., No. CIV-16-321-JHP, 2017 WL 318822, at *4 (E.D. Okla. Jan. 23, 2017),

*aff'd*, 708 F. App'x 518 (10th Cir. 2017) ("physical assault . . . is typically required when

dealing with isolated incidents of misconduct"); *Pfannenstiel v. Kansas*, No. 5:21-cv-

04006-HLT-ADM, 2022 WL 873674, at *15 (D. Kan. Mar. 24, 2022) ("three incidents of

touching, without some showing that the context was severe or offensive or sexual, is not

sufficient to state a claim for hostile work environment"); *cf. Mitchem v. Sleepcair, Inc*.,

No. 20-2627-DDC-GEB, 2021 WL 4439406, at *6-7 (D. Kan. 2021) (finding allegations

were sufficiently severe to state a claim when they included multiple incidents of touching,

including rubbing the plaintiff's shoulders, back, and neck, coupled with an unwanted

sexual advance involving a kiss on the lips and "sexual[ ] grinding"). And the remaining

allegations amount to nothing more than "the run-of-the-mill boorish, juvenile, or annoying

8

behavior that is not uncommon in American workplaces." *Marks*, 2017 WL 4278498, at *4. The comments and actions allegedly directed at Plaintiff—including that a Human Resources employee told Plaintiff she would receive her 30 cent raise after six months of employment [#33 at 6, 7]; that Defendant failed to reassign Plaintiff after an employee took Plaintiff's wrap pole and there were no stagers to move the pallets [*id*. at 8-9]; and that Plaintiff's manager said he was informed Plaintiff "refused to take a radio" when Plaintiff simply could not find an available radio to use [*id*. at 10-11]—were not physically threatening or violent and cannot objectively be considered "severe." *See Morris*, 666 F.3d at 666-68 (discussing cases where physical or sexual threats and violence rose to the level of "severe" conduct which altered a plaintiff's conditions of employment).

Nor do the infrequent allegations of alleged discrimination constitute sufficiently pervasive conduct to be considered objectively hostile or to create an inference of gender or racial animus. Plaintiff identifies only four specific instances of conduct to substantiate this claim, and the Court finds these sporadic unpleasant interactions do not amount to the "steady barrage of opprobrious [conduct]" enough to alter the conditions of Plaintiff's employment. *Brown v. LaFerry's LP Gas Co.*, 708 F. App'x 518, 522 (10th Cir. 2017) (affirming dismissal of hostile work environment claim and holding that three racially inappropriate or offensive comments "were not sufficiently pervasive or extreme to support a hostile work environment claim under Title VII."). Plaintiff fails to explain how any of the allegations—including the badge incident, the six month pay disparity, or the work assignments on April 10 and April 11, 2022—"created a workplace atmosphere 'permeated with discriminatory intimidation, ridicule, and insult.'"[4] *Juarez v. City & Cnty.*

---

[4] Nor is it entirely clear that the incidents were based upon a protected characteristic.

*of Denver*, No. 23-CV-00409-PAB-NRN, 2024 WL 1156610, at *11 (D. Colo. Mar. 15, 2024) (quoting *Morris*, 666 F.3d at 663).  To the contrary, regarding the pay disparity, for example, once the Human Resources employee told Plaintiff that she would receive her 30 cent raise after six months of employment, Plaintiff describes an amicable resolution—that she "felt [they] had an understanding at this time and [she] thanked [Mr. Kern] for explaining this process." [#33 at 7]

Ultimately, there "is no indication that the relatively isolated incidents in this case altered the terms or conditions of [Plaintiff's] employment and created an abusive working environment." *Morris*, 666 F.3d at 669 (quotation omitted).  As a result, the Court finds that the Complaint does not plausibly allege an inference of severe or pervasive conduct sufficient to establish a hostile work environment claim.  Nonetheless, when a plaintiff proceeds pro se, dismissal with prejudice is only appropriate "where it is obvious that the plaintiff cannot prevail on the facts [s]he has alleged and it would be futile to give h[er] an opportunity to amend."  *Oxendine v. Kaplan*, 241 F.3d 1272, 1275 (10th Cir. 2001); *see also Reynoldson v. Shillinger*, 907 F.2d 124, 127 (10th Cir. 1990) (holding prejudice should not attach to dismissal when plaintiff has made allegations "which, upon further investigation and development, could raise substantial issues").  Accordingly, the Court respectfully RECOMMENDS that Plaintiff's Title VII and Section 1981 hostile work environment claims be  DISMISSED WITHOUT PREJUDICE.

**B.  Title VII Discrimination**

Plaintiff asserts claims of race and sex discrimination under Title VII.  [#33 at 6] Defendant argues Plaintiff fails to state a claim for discrimination.  [#46 at 11-12]  The Court agrees.

Title VII creates a cause of action for discrimination based on an individual's "race, color, religion, sex, or national origin." *Johnson v. Ry. Express Agency, Inc.*, 421 U.S. 454, 457 (1975) (quotation omitted). Plaintiff can prove a disparate treatment claim "either (1) by direct evidence that a workplace policy, practice, or decision relies expressly on a protected characteristic, or (2) by using the burden-shifting framework set forth in [*McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)]." *Young v. United Parcel Serv., Inc.*, 575 U.S. 206, 213 (2015).

Here, Plaintiff does not allege any direct evidence of discrimination. [*See generally* #33] Plaintiff therefore must rely upon the burden-shifting framework set forth in *McDonnell Douglas*. To make a prima facie case under that framework, a plaintiff must show that: (1) she is a member of a protected class; (2) she suffered an adverse employment action; and (3) the challenged action occurred under circumstances giving rise to an inference of discrimination. *Bennett v. Windstream Commc'ns, Inc.*, 792 F.3d 1261, 1266 (10th Cir. 2015). If the plaintiff makes this showing, then the employer must have an opportunity to articulate some legitimate, non-discriminatory reason for its action. *Young*, 575 U.S. at 213. If the employer articulates such a reason, then the burden shifts back to the plaintiff to prove the employer's proffered reason was pretextual. *Id.*

"The prima facie case under *McDonnell Douglas*, however, is an evidentiary standard, not a pleading requirement." *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 510 (2002). As the Supreme Court explained, "under a notice pleading system, it is not appropriate to require a plaintiff to plead facts establishing a prima facie case because the *McDonnell Douglas* framework does not apply in every employment discrimination case"—*e.g.*, where a plaintiff is able to produce direct evidence of discrimination. *Id.* at

11

511. The Supreme Court further cautioned that "the precise requirements of a prima facie case can vary depending on the context" and thus "it may be difficult to define the precise formulation of the required prima facie case in a particular case" before "discovery has unearthed relevant facts and evidence." *Id.* at 512.

But although a plaintiff is not required to set forth a prima facie case of discrimination in the complaint, "she is required to set forth plausible claims." *Khalik v. United Air Lines*, 671 F.3d 1188, 1193 (10th Cir. 2012). The plaintiff may not merely rely upon "the type of conclusory and formulaic recitations disregarded by the Court in *Iqbal*." *Id.* "While specific facts are not necessary, [] some facts are." *Id.* (quotation omitted). Moreover, although the plaintiff is not required to allege a prima facie case, "[t]he inferences offered by the *McDonnell Douglas* framework assist judges in resolving motions to dismiss by providing an analytical framework to sift through the facts alleged." *Morman v. Campbell Cnty. Mem'l Hosp.*, 632 F. App'x 927, 933 (10th Cir. 2015); *see also Khalik*, 671 F.3d at 1192 (explaining that "the elements of each alleged cause of action help to determine whether [the plaintiff] has set forth a plausible claim").

Here, Plaintiff's allegations do not explain how the "challenged action[s] occurred under circumstances giving rise to an inference of discrimination." *Bennett*, 792 F.3d at 1266. For example, Plaintiff alleges her Indian American, male co-worker made 30 cents more than her as a Learning Ambassador. While this could indicate some degree of differential treatment, Plaintiff also alleges that a Human Resources employee explained to Plaintiff that she would receive the raise after her six month of employment [#33 at 6], and has explained that the "male received a pay raise because he worked there longer than [her]" [#54 at 11].

Second, Plaintiff alleges that Defendant repeatedly assigned her to job duties that she disliked.  For example, Plaintiff alleges that Defendant assigned her to work as a pallet wrapper, even though it made her dizzy, and then refused to reassign her when an employee took Plaintiff's wrap pole, and Plaintiff did not have any stagers to move the pallets.  [#33 at 8-9]  Plaintiff also alleges that the following day she was assigned to the role of gatekeeper, but could not find an available radio.  [*Id.* at 10-11]  These facts do not plausibly allege any degree of differential treatment *because of race or sex*.  *See Muldrow v. City of St. Louis*, 144 S. Ct. 967, 974 (2024) ("[Title VII] targets practices that treat[] a person worse because of sex or other protected trait." (quotation omitted)).

Finally, Plaintiff alleges that she "submitted numerous job transfer requests that were consistently declined without explanation."  [#33 at 5]   But she does not allege any facts regarding the circumstances surrounding these rejections, indicating Plaintiff's qualifications for these roles, or asserting that these roles were filled by non-minorities. As a result, and without any additional information, the Court is unable to infer that these referenced actions were taken on account of Plaintiff's race or sex, and Plaintiff has therefore failed to plausibly allege a discrimination claim.  *See, e.g., Simms v. Oklahoma ex rel. Dep't of Mental Health & Substance Abuse Servs.*, 165 F.3d 1321, 1328 (10th Cir. 1999) ("To carry the initial burden of establishing a prima facie case of race discrimination for a failure to promote claim, the plaintiff must typically show that he or she (1) belongs to a minority group; (2) was qualified for the promotion; (3) was not promoted; and (4) that the position remained open or was filled with a non-minority." (quotation omitted)), *abrogated on other grounds as recognized in Eisenhour v. Weber Cnty.*, 744 F.3d 1220, 1227 (10th Cir. 2014).

13

In her response brief, Plaintiff does not cite any authorities to support her position that her Complaint states a claim, and instead relies on facts that are not alleged in her Complaint. [#54 at 9-12] For example, Plaintiff asserts for the first time that she was denied disability leave and received delayed payments. [*Id.* at 10] The Court does not consider these additional factual allegations that are not contained in the Complaint. *See In re Qwest Commc'ns Int'l, Inc.*, 396 F. Supp. 2d at 1203 (disregarding additional factual claims asserted in briefing on a motion to dismiss, explaining that "plaintiffs may not effectively amend their Complaint by alleging new facts in their response to a motion to dismiss"). But the Court is cognizant that the inclusion of new allegations in Plaintiff's response brief may indicate Plaintiff's desire to amend her Complaint. *See Adams v. C3 Pipeline Constr. Inc.*, 30 F.4th 943, 971, 976 (10th Cir. 2021) (explaining that "[Tenth Circuit] cases interpret the inclusion of new allegations in a response to a motion for summary judgment, as a potential request to amend the complaint," and remanding a dismissed case for further consideration of the plaintiff's "implied request to amend her complaint"). Accordingly, the Court respectfully RECOMMENDS that Defendant's Motion to Dismiss be GRANTED to the extent that it seeks dismissal of Plaintiff's Title VII discrimination claim, and that this claim be DISMISSED WITHOUT PREJUDICE. *See Oxendine*, 241 F.3d at 1275; *Reynoldson*, 907 F.2d at 127.

**C. Section 1981 Discrimination**

It is unclear whether Plaintiff brings a separate cause of action for race discrimination under Section 1981. [*See generally* #33] Regardless, Defendant argues that "Plaintiff has stated no claim for which relief may be under granted under Section 1981." [#46 at 4] The Court agrees.

14

To establish a prima facie case of discrimination under Section 1981, a plaintiff must establish: "(1) that the plaintiff is a member of a protected class; (2) that the defendant had the intent to discriminate on the basis of race; and (3) that the discrimination interfered with a protected activity as defined in § 1981."  *Hampton v. Dillard Dep't Stores, Inc.*, 247 F.3d 1091, 1101–02 (10th Cir. 2001) (citing *Reynolds v. Sch. Dist. No. 1, Denver, Colo.*, 69 F.3d 1523, 1532 (10th Cir. 1995)).  "Section 1981 establishes four protected interests:  (1) the right to make and enforce contracts; (2) the right to sue, be parties, and give evidence; (3) the right to the full and equal benefit of the laws; and (4) the right to be subjected to like pains and punishments."  *Phelps v. Wichita Eagle–Beacon*, 886 F.2d 1262, 1267 (10th Cir. 1989).  It is not clear from the face of the complaint which protected interest Plaintiff alleges that Defendants violated.  And Plaintiff's response fails to point to any authority that would support an inference that Defendant's alleged conduct interfered with any protected activity as defined in Section 1981. [*See generally* #54]  The Court therefore respectfully RECOMMENDS that Defendant's Motion to Dismiss be GRANTED to the extent that it seeks dismissal of Plaintiff's Section 1981 discrimination claim, and that this claim be DISMISSED WITHOUT PREJUDICE.  *See Oxendine*, 241 F.3d at 1275; *Reynoldson*, 907 F.2d at 127.

**D.  Retaliation**

Plaintiff asserts Defendant retaliated against her for reporting "unlawful conduct after her first day of training."  [#33 at 6]  Defendant argues that Plaintiff fails to state the elements of her claim.  [#46 at 13-14]  The Court agrees.

 "Title VII forbids employers from retaliating against employees for opposing any activity that is unlawful under Title VII."  *Fassbender v. Correct Care Sols., LLC*, 890 F.3d

875, 890 (10th Cir. 2018) (quotation omitted).  "To state a prima facie case of retaliation, [the plaintiff] must demonstrate that[] (1) she engaged in protected opposition to discrimination; (2) [the defendant] took an adverse employment action against her; and (3) there exists a causal connection between the protected activity and the adverse action."  *Id.* (quotation omitted)

Plaintiff appears to allege that Defendant retaliated against her for reporting the actions of her male co-worker who came up to Plaintiff as she was watching training videos and "grabbed her badge located near her breast, looked at [ ] the badge, let it go and walked away without speaking to her."  [#33 at 5]  Specifically Plaintiff alleges that, in retaliation, "Human Resources . . . broke policy and confidentiality agreements, [and] also continued to harass her after her last day on site, April 11, 2022, through email requesting a time to discuss concerns and receiving (3) Attendance Infraction Violations via email." [#33 at 6]  In her Response, Plaintiff also argues the April 2022 work assignments—as a pallet wrapper and gatekeeper—were also retaliation for reporting the badge incident in October 2021. [#54 at 13-14]

Assuming that reporting the badge incident constituted protected activity, *see Somoza v. Univ. of Denver*, 513 F.3d 1206, 1213-14 (10th Cir. 2008) (explaining that informal complaints of discrimination to one's superiors can constitute protected activity), Plaintiff fails to allege that Defendant took an adverse action against Plaintiff.  [*See* #46 at 13]  "The Tenth Circuit 'broadly define[s]' the phrase [adverse employment action], stating that 'adverse employment actions constitute a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits.'" *Kachadoorian v.*

*United Airlines, Inc*., No. 18-cv-01205-RBJ, 2019 WL 1953399, at *4 (D. Colo. May 2, 2019) (quoting *Orr v. City Of Albuquerque*, 417 F.3d 1144, 1150 (10th Cir. 2005)). "[T]he harm suffered by plaintiff must be sufficient to 'dissuade[ ] a reasonable worker from making or supporting a charge of discrimination.'" *Id*. (quoting *Hubbard v. United Servs. Auto. Ass'n*, No. 05-cv-00927-WDM-BDN, 2007 WL 437676, at *7 (D. Colo. Feb. 5, 2007)).

Here, Plaintiff has not alleged facts "that would lead a reasonable person in her position to concluded that the [change in duties] was a materially adverse change." *White v. Schafer*, 738 F. Supp. 2d 1121, 1136 (D. Colo. 2010), *aff'd*, 435 F. App'x 764 (10th Cir. 2011). "Other than the indication that she had experienced problems with such duties," there are no allegations that being a pallet wrapper or gatekeeper "were generally considered by [Defendant's] staff to be particularly arduous or unpleasant." *Id.* Thus, Plaintiff has failed to plausibly allege an adverse action for retaliation purposes. *Id.*

Plaintiff's allegations also do not allow for an inference that the actions of Human Resources—emailing her to discuss "concerns" and imposing "attendance infraction violations"—or the actions of Defendant in assigning her to work as a pallet wrapper or gatekeeper were causally connected to the reporting. The required causal connection may be established with "very close temporal proximity between the protected activity and the retaliatory conduct." *O'Neal v. Ferguson Const. Co.*, 237 F.3d 1248, 1253 (10th Cir. 2001). Plaintiff alleges that the badge incident occurred on October 15, 2021. [#33 at 5] Plaintiff spoke to a female co-worker about the incident the following day. [*Id*.] Plaintiff alleges Defendant retaliated: (1) when it assigned her to work as a pallet wrapper and gatekeeper on April 10 and April 11, 2022, and (2) when Human Resources requested a

17

time to discuss concerns over email and imposed several attendance infraction violations after her last day on site, April 11, 2022.  [#33 at 6]   Under Tenth Circuit precedent, "it is . . . patent that if the adverse action occurs three months out and beyond from the protected activity, then the action's timing alone will not be sufficient to establish the causation element."  *Conroy v. Vilsack*, 707 F.3d 1163, 1181 (10th Cir. 2013).  Because the gap between Plaintiff's protected conduct and the alleged adverse action exceeds this three-month threshold, Plaintiff cannot rely solely on temporal proximity to establish causation.  *Id.* at 1181-83; *Jackson-Cobb v. Sprint United Mgmt.*, 173 F. Supp. 3d 1139, 1148 (D. Colo. 2016) (citing *O'Neal*, 237 F.3d at 1253).   And Plaintiff offers no other allegations indicating that her reporting of the badge incident influenced the decision of Defendant to assign her certain job responsibilities or impose attendance infraction violations.

In the Response, Plaintiff again does not cite any authority and relies, again, on factual allegations not contained in her Complaint.  [#54 at 12-13]  The Court will not consider these additional allegations, *see In re Qwest Commc'ns Int'l, Inc.*, 396 F. Supp. at 1203, but concludes that Plaintiff should have the opportunity to amend her Complaint. *See Adams*, 30 F.4th at 971; *Oxendine*, 241 F.3d at 1275; *Reynoldson*, 907 F.2d at 127. Accordingly, the Court respectfully RECOMMENDS that Defendant's Motion to Dismiss be GRANTED to the extent that it seeks dismissal of Plaintiff's claim for retaliation, and that this claim be DISMISSED WITHOUT PREJUDICE. *Oxendine*, 241 F.3d at 1275; *Reynoldson*, 907 F.2d at 127.

## IV.    CONCLUSION

For the reasons set forth above, the Court respectfully **RECOMMENDS** that Defendant's Motion to Dismiss [#46] be **GRANTED** and that Plaintiff's Complaint be **DISMISSED WITHOUT PREJUDICE**.  In the event that this Recommendation is adopted, the Court further **RECOMMENDS** that Plaintiff be given 21 days from the entry of such Order to file an Amended Complaint that cures the deficiencies identified herein.[5]

DATED: June 5, 2024                    BY THE COURT:

                                       s/Scott T. Varholak_____
                                       United States Magistrate Judge

---

[5] Within fourteen days after service of a copy of this Recommendation, any party may serve and file written objections to the magistrate judge's proposed findings of fact, legal conclusions, and recommendations with the Clerk of the United States District Court for the District of Colorado.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *Griego v. Padilla (In re Griego)*, 64 F.3d 580, 583 (10th Cir. 1995).  A general objection that does not put the district court on notice of the basis for the objection will not preserve the objection for *de novo* review.  "[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for *de novo* review by the district court or for appellate review."  *United States v. 2121 East 30th Street*, 73 F.3d 1057, 1060 (10th Cir. 1996).  Failure to make timely objections may bar *de novo* review by the district judge of the magistrate judge's proposed findings of fact, legal conclusions, and recommendations and will result in a waiver of the right to appeal from a judgment of the district court based on the proposed findings of fact, legal conclusions, and recommendations of the magistrate judge.  *See Vega v. Suthers*, 195 F.3d 573, 579-80 (10th Cir. 1999) (holding that the district court's decision to review magistrate judge's recommendation *de novo* despite lack of an objection does not preclude application of "firm waiver rule"); *Int'l Surplus Lines Ins. Co. v. Wyo. Coal Refining Sys., Inc.*, 52 F.3d 901, 904 (10th Cir. 1995) (finding that cross-claimant waived right to appeal certain portions of magistrate judge's order by failing to object to those portions); *Ayala v. United States*, 980 F.2d 1342, 1352 (10th Cir. 1992) (finding that plaintiffs waived their right to appeal the magistrate judge's ruling by failing to file objections).  *But see, Morales-Fernandez v. INS*, 418 F.3d 1116, 1122 (10th Cir. 2005) (holding that firm waiver rule does not apply when the interests of justice require review).